IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 3, 2024

## FARRIS LAMONT KIDD v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-22-173        Donald H. Allen, Judge**

_____

## No. W2023-00601-CCA-R3-PC

_____

Petitioner, Farris Lamont Kidd, pleaded guilty to five separate charges, and received an effective fourteen-year sentence. Thereafter, Petitioner filed a pro se petition for post-conviction relief, which the post-conviction court denied after a hearing. On appeal, Petitioner argues he received ineffective assistance of counsel. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which J. ROSS DYER and JOHN W. CAMPBELL, SR., JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Farris Lamont Kidd.

Jonathan Skrmetti, Attorney General and Reporter; James E. Gaylord, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I. Facts and Procedural History

#### A. Guilty Plea Proceedings

On July 19, 2021, Petitioner, who was charged in two separate cases in Madison County Circuit Court, pleaded guilty to five separate charges pursuant to a plea agreement with the State[1]. Petitioner, who was indigent, was represented by the 26th Judicial District

---

[1] The written plea agreement is not contained within the record in this case; however, the agreement was announced during the hearing where Petitioner entered his guilty pleas before the trial court. A transcript of the hearing is contained within the record.

Public Defender's Office, and several attorneys with that office, including Counsel and Co-counsel, consulted with him from the time of his arrest until he entered his guilty pleas, when he was represented by Counsel. In Case Number 20-576, Petitioner pleaded guilty to attempted second degree murder (a Class B felony), attempted aggravated robbery, and employing a firearm during the commission of a dangerous felony (both Class C felonies). In Case Number 20-577, Petitioner pleaded guilty to simple possession of marijuana, and possession of drug paraphernalia (both Class A misdemeanors). In exchange for his guilty pleas, Petitioner was classified as a Range I offender and would serve concurrent sentences of eight years for the attempted second degree murder, six years for the attempted aggravated robbery, and eleven months and twenty-nine days for the marijuana and drug paraphernalia possession. Petitioner also agreed to serve six years for employing a firearm during the commission of a dangerous felony, consecutively to his other sentences, for an effective sentence of fourteen years in the Tennessee Department of Correction (TDOC).

During the hearing in which the trial court accepted Petitioner's guilty pleas, the following exchange occurred:

The Court:     Now, is this guilty plea being entered freely and voluntarily here today?

The Court:     [Petitioner?]

Petitioner:     Yes, sir.

The Court:     Has any force or pressure been applied to you or any threats or promises been made to you to cause you to plead guilty?

Petitioner:     No, sir.

. . . .

The Court:     Now, are . . . you satisfied with your lawyer's representation in your case?

Petitioner:     Yes, sir.

. . . .

The Court:     Again, are you satisfied with [Counsel's] representation?

Petitioner:     Yes, sir.

- 2 -

. . . .

The Court: Now, is there anything that your attorney . . . has done or said that you feel like you need to address the [c]ourt about at this time?

Petitioner: No, sir.

The Court: Do . . . you feel like you fully understand what you are doing by pleading guilty here today?

. . . .

Petitioner: I do.

. . . .

The Court: Of course, you'll be transferred to [TDOC] to serve the total effective sentence of [fourteen] years. Do you understand that?

Petitioner: Yes, sir.

The Court : Of course, six years will be served at 100 percent and then the eight[-]year sentence will be served at [thirty] percent. Do you understand that?

Petitioner: Yes, sir.

The Court: Now, any questions about plea arrangement or about what your sentence will be, [Petitioner]?

Petitioner: No, sir.

The Court: And based upon everything that we've discussed, do you still wish to go forward with this guilty plea?

Petitioner: Yes, sir.

The trial court accepted Petitioner's guilty pleas and pursuant to the plea agreement sentenced Petitioner to an effective fourteen-year sentence in TDOC.

## B. Post-Conviction Petition and Hearing

On July 18, 2022, Petitioner timely filed a pro se petition for post-conviction relief raising a number of claims. As relevant to this appeal, Petitioner argued that Counsel and Co-counsel were ineffective in failing to explain to Petitioner that he would serve the six-year firearms sentence consecutively to the eight-year sentence for attempted second degree murder.[2] The post-conviction court found that Petitioner had presented a colorable claim, and appointed post-conviction counsel to represent Petitioner in the proceedings. Post-conviction counsel did not file an amended petition for post-conviction relief.

The case proceeded to a hearing on November 23, 2022. The State exhibited a copy of Petitioner's guilty plea transcript at the hearing. Three witnesses testified: Petitioner, Counsel, and Co-counsel. Petitioner testified that shortly after he was indicted, another attorney with the public defender's office visited him in jail and discussed various aspects of his criminal case. Petitioner stated that he told the other attorney that he would plead guilty "if I could get anything under [ten years] . . . but I wanted it at [thirty] percent." Petitioner indicated that he believed it was in his "best interest not to risk the potential of getting [thirty-one] years at basically 100 percent in [his] case."

Petitioner testified that Co-counsel "explained the plea deal to me" over video conference. Petitioner said understanding that he was "getting a flat out [eight]" because Petitioner said he was told that he would serve "maybe [five] more years and get out." Petitioner recalled pleading guilty before the trial court, but claimed he did not understand he received consecutive sentences until he was "already in TDOC" and when he "filled out the post-conviction." When Petitioner was asked how he misunderstood his sentence after it was explained by both defense counsel and the judge, Petitioner indicated that he did not "know what consecutive" meant and that he "just found out what consecutive was."

On cross-examination, Petitioner admitted to signing the plea agreement from the State. Petitioner repeated that he thought he was receiving concurrent eight- and six-year sentences, but admitted "I know what [fourteen] is." When asked why he told the trial court that he understood the plea offer, he stated his attorney told him he had to "say yes to what the judge is going to say." Petitioner claimed "I didn't know [anything] about a [fourteen]-year sentence. I thought I was doing an [eight]-year sentence." He admitted, "I knew I had the [six]-year sentence," but claimed the eight-year sentence would "eat up

---

[2] In his appellate brief, Petitioner also claims another attorney, who had left the public defender's office prior to Petitioner's guilty plea, was ineffective in his representation of Petitioner. However, Petitioner did not specifically allege this claim in his original petition, neither Petitioner nor the State called this attorney as a witness at the post-conviction hearing, and the post-conviction court's order did not address this attorney's actions. Accordingly, Petitioner claim as to this attorney's representation is waived. *See* Tenn. Code Ann. 40-30-106(g).

everything." Despite his claims, Petitioner admitted to answering affirmatively to the trial court when it explained Petitioner was receiving a fourteen-year sentence.

Co-counsel testified that the public defender's office was appointed to represent Petitioner after he was indicted in his underlying case and that private counsel had represented Petitioner at his preliminary hearing in General Sessions court. Co-counsel said that another attorney with the office initially had represented Petitioner at arraignment before the attorney left the office for other employment. Regarding Co-counsel's involvement, she stated that she had assisted in obtaining discovery from the State but was not sure if she even "came to court on [Petitioner's] case." She testified she met with Petitioner "a few times," both in-person and in the "kiosk," including a meeting with Petitioner, Counsel, and herself. Co-Counsel reviewed the discovery file "up one side and down the other" with Petitioner. Co-counsel was able to negotiate what she believed to be a favorable plea agreement for Petitioner for the effective fourteen-year sentence. When she met with Petitioner, she said she told Petitioner that he would "have to finish one [sentence], no matter the percentage, before you start the second." She explained that she was confident that Petitioner understood the terms of his guilty plea because he was "articulate" in their conversations, and they discussed his plea deal at length.

Counsel, who represented Petitioner during his guilty plea, testified that he explained the plea agreement to Petitioner, including the consecutive sentence in "layman's terms." He described his general approach to explaining consecutive sentences to criminal defendants, making sure they understand "one time period ends for one change," then "the other one begins." Counsel was "absolutely positive" he explained the difference between concurrent and consecutive sentences, and stated that if he failed to adequately explain the issue to Petitioner, the trial court was "very thorough" and would have made the difference "very clear" to Petitioner in the plea colloquy. Counsel stated he believed that Petitioner "clearly understood" that he would serve a fourteen-year sentence, and he indicated so to Petitioner, "otherwise, [Counsel] would have never approached the [c]ourt with a plea offer."

The post-conviction court took the matter under advisement and denied Petitioner's request for relief on December 12, 2022 in a detailed written order. The court found that Petitioner "failed to prove the allegations in his Petition," and that "the advice given and the services rendered by trial counsel were certainly within the range of competence demanded of attorneys representing defendants in criminal cases." The post-conviction court credited the testimony of Counsel and Co-counsel on the issue that Petitioner "fully understood" he was receiving a fourteen-year sentence. Further, the court credited Petitioner's testimony at his plea hearing that Petitioner was not under the influence of any mind-altering substance and was not pressured, threatened, or forced into pleading guilty. The court did not credit Petitioner's testimony at the post-conviction hearing, finding

Petitioner's testimony "untruthful" on whether Petitioner understood he was receiving a fourteen-year sentence by pleading guilty. Petitioner's appeal followed.

## II. Analysis

On appeal Petitioner argues his attorneys were ineffective in advising Petitioner about the terms of his plea agreement with the State. Specifically, he argues that his attorneys (and the trial court) "should have been extraordinarily careful in explaining [Petitioner] his rights and the length of his sentence." The State responds that Petitioner has failed to meet his burden to show his attorneys performed deficiently, and has failed to show any prejudice. We agree with the State.

To obtain post-conviction relief, a petitioner must establish his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of the United States or Tennessee Constitution." Tenn. Code Ann. § 40-30-103. A petitioner bears the burden of proving the factual allegations contained in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see *Dellinger v. State*, 279 S.W.3d 282, 296 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger*, 279 S.W.3d at 292 (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, a post-conviction court's factual findings will not be disturbed unless the evidence contained in the record preponderates against the findings. *Brooks v. State*, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988); *Clenny v. State*, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). On the other hand, conclusions of law are given no presumption of correctness on appeal. *Dellinger*, 279 S.W.3d at 293; *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). We review "a post-conviction court's conclusion of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (first citing *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); and then citing *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011)). Even so, the post-conviction court's underlying findings of fact may not be disturbed unless the evidence preponderates against them. *Dellinger*, 279 S.W.3d at 294 (Tenn. 2009) (first citing Tenn. R. App. P. 13(d); and then citing *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006)). As a result, the appellate court is "not free to re-weigh or reevaluate the evidence, nor [is it] free to substitute [its] own inferences for those drawn by the post-conviction court." *Whitehead*, 402 S.W.3d at 621 (citing *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001)).

Both the United States Constitution and the Constitution of the State of Tennessee guarantee criminal defendants the right to effective assistance of counsel. U.S. Const. amend VI; Tenn. Const. art. I, § 9. Under the Sixth Amendment to the United States Constitution, when a petitioner raises an ineffective assistance of counsel claim, the burden is on the petitioner to show both (1) counsel's performance was deficient and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-372 (1993). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

To prevail on such a claim, a petitioner must prove both prongs of the *Strickland* test, and failure to prove either is "a sufficient basis to deny relief on the claim." *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "[A] court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).

To prove that counsel's performance was deficient, a petitioner must establish that his attorney's conduct fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Reviewing courts must determine whether advice given or services rendered are within the range of competence required of attorneys. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). A review of trial counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Additionally, in a guilty plea context, a petitioner "must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial. *Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, the post-conviction court found that the testimony of Petitioner's attorneys was credible on whether they advised Petitioner on the plea offer. Specifically, the court noted Co-counsel's testimony that she "fully explained" Petitioner's fourteen-year sentence to him, and it found this testimony was "truthful and correct." The court also noted Counsel and Co-counsel both testified that Petitioner "fully understood what he was doing by pleading guilty and that he wanted to accept the State's [p]lea offer of a total effective sentence of [fourteen] years to serve." The court found that the representation of Counsel and Co-counsel "were well within the bounds of generally accepted professional standards."

The court found that Petitioner's post-conviction hearing testimony was not credible because his hearing testimony was directly contradicted by his attorneys' testimony and the sworn statements Petitioner had made at his plea hearing. The court recalled that during Petitioner's plea hearing, he had twice told the trial court he was satisfied with his legal representation, that he had affirmed his guilt of the charges three times, and he had told the trial court that he was freely knowingly, and voluntarily pleading guilty. Further, the post-conviction court noted that Petitioner had told the trial court that he fully understood he was receiving a fourteen-year sentence. Finally, the court noted that Petitioner had admitted to filing his petition for post-conviction relief *after* he was denied parole.

Regarding prejudice, the post-conviction court found that there was no evidence that Petitioner "desired to go to trial in his two cases." We find nothing in the record either. As the State correctly points out in its brief, this alone defeats his claim. *See Hill*, 474 U.S. at 59 (explaining that a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). In contrast, the testimony by Petitioner and his attorneys shows Petitioner always desired to obtain a favorable plea offer, rather than receiving a thirty-one-year sentence at 100-percent service if he proceeded to trial.

There is no evidence in the record which preponderates against the post-conviction court's findings. We agree with the post-conviction court that Petitioner's attorneys performed effectively, and Petitioner cannot show prejudice. We will not disturb the post-conviction court's credibility findings on appeal, and Petitioner is not entitled to relief.

## III. Conclusion

Based on our review of the record and the foregoing reasons and authorities, we conclude the post-conviction court properly denied Petitioner's petition for post-conviction relief. The judgment of the post-conviction court is affirmed.

_____
MATTHEW J. WILSON, JUDGE

- 8 -